> "[Signed] Chas. S. Werling,
> "Deputy State Tax Collector for the City of New Orleans."

The defendant swore that she did not receive any notice at all.

The deputy state tax collector testified, however, that he delivered the notice at the residence of defendant to James Marcelin, who stated to him that he was 17 years of age. James Marcelin is the son of the defendant, who was absent at the time.

" 'The testimony of disinterested officer's corroborating a public record which he made held to overcome the denial under oath of party in interest as to notice required by

Constitution of 1879, art. 210.' Hansen v. Civil Sheriff et al., 52 La. Ann. 1565, 28 So. 167." In re Interstate Land Co., 110 La. 286, 291, 34 So. 446, 448.

It also appears from the testimony of Philip G. Veith, plaintiff, and of Arthur H. Simonin, that they visited the defendant at her residence to ascertain if she had received the delinquent tax notice, and that she admitted to them that she had received it and had given it to her attorney.

The trial judge believed the officer who had made the service and the two other witnesses, and was satisfied that the notice had been served. We find no good reason for arriving at a different conclusion.

The rental value of the property per month is established by the testimony of plaintiff, and no testimony to the contrary appears in the record.

Judgment affirmed.

(129 So. 534)

**POLIZZOTTO v. D'AGOSTINO et al.**

No. 30382.

June 2, 1930.

Rehearing Denied July 2, 1930.

Borron, Hebert & Owen, of Plaquemine, for appellant.

Joseph Nicolosi and Jules A. Carville, both of Plaquemine, and C. S. Hebert, of New Orleans, for appellees.

THOMPSON, J.

This is a suit by a lessee to enforce a renewal of a lease on a store compartment situated in the city of Plaquemine. A preliminary injunction was prayed for to restrain the defendant lessor from leasing the said property to any one else, and from interfering with plaintiff's possession.

The defense is that no legal and sufficient notice was given the defendant of plaintiff's desire to renew the lease as was provided for in the original lease.

This defense was sustained after a trial on the merits and the plaintiff's demand rejected.

The lease sought to be renewed was dated August 5, 1926, and was to begin on September 1, 1926, and end on August 31, 1928. The property was leased by the plaintiff for the purpose of conducting a grocery and fruit business, and it was stipulated that the lessor should not establish or operate in any other part of the building any business conflicting with that of the lessee.

The lessee was given the right or the option of renewing the lease for three years additional upon the same terms and conditions and at the same price, $60 per month, provided that the lessee would give the lessor written notice of his intention to avail himself of the privilege of renewal at least sixty days before the expiration of the lease.

On June 29, 1928, which was more than sixty days before the expiration of the lease, the following letter was addressed to the husband of the lessor and who was the authorized agent of his wife:

"This is to inform you that we want to avail ourselves of our right to renew our lease for an additional three years."

"We wish to inform you that we must insist that you stick to the agreements on the lease, that is, that you nor any one else should not operate in the same building which we lease apart from you any business conflicting with ours. Please send us a renewal, and oblige."

This letter was signed "V. Polizzotto's Sons."

On the following day, June 30th, which was sixty-one days before the lease expired, the attorney for the lessor addressed the following letter to Sam Polizzotto the lessee;

"Your letter of the 29th inst., addressed to Mr. D'Agostino, has been handed me for attention and reply.

"We note wherein you have expressed a desire to renew a lease existing between yourself and Mrs. D'Agostino of date August 5th 1926 for an additional period of three years.

"It is specifically noted therein where you alleged that the agreement between yourself and your landlord must be complied with and

particularly that no business therein or upon said premises shall conflict with that of yours.

"You are advised that your lessor has to date complied with the provisions of said lease and it is rather surprising that at this time, nearing the completion of said lease you should make mention of a breach on the part of the lessor. It is impossible to conceive that you could be under the impression that there is any agreement between you and Mrs. D'Agostino that the specific business in which Mr. D'Agostino was operating on the premises long before the said lease was made should be discontinued and your attitude since also would indicate that you cannot be serious in this contention.

"I believe Mrs. D'Agostino has been very fair with you and has permitted or rather acquiesced by her silence in allowing you to handle various kinds of articles not customarily sold in a grocery store and fruit store. For example, you are handling hardware, cigars, cigarettes, soft drinks, confections and various other commodities in violation of your lease, and though your lessor is ready to renew the lease you are advised that any breach of contract so far seems to be against you."

After the receipt of the foregoing letter by the plaintiff, a conference was had between plaintiff and defendant's husband at the office of defendant's attorney. At this conference a controversy arose over the clause of the original lease which forbade the operation of a conflicting business in the same building.

The defendant wanted the clause left out of the renewal lease, and the plaintiff insisted that it should be inserted, being in keeping with the terms of the original lease. No agreement was reached, and the conference ended to meet again two days later. It was understood that the delay would not deprive the parties of any rights then existing.

No further meeting was had, and on September 1, 1928, the day after the lease expired, the lessor and her husband addressed the plaintiff the following letter.

"This is to advise you that you having failed to comply with the requirements of your lease, to-wit: To give me a written notice of your intention to avail yourself of the option of renewal under the same terms and conditions, as stipulated in said lease, sixty days prior to the expiration of the same.

"Your lease expired August 31, 1928, and your rent and a new lease will have to be considered should you desire to remain in the building.

"I will be glad to discuss terms and conditions with you."

This letter it seems was the first intimation to the plaintiff of the claim made by the defendant that no notice of a desire to renew the lease had been given, or that the notice so given was not signed by the lessee.

Thereafter, on September 10, 1928, the plaintiff tendered to the lessor a formal renewal lease, together with the rental notes which was refused by the lessor.

On September 17, 1928, the lessor, through her husband, as agent, addressed the following letter to the lessee.

"I hereby notify you as agent of your landlord, that your rental on the premises situated on Railroad Ave., in this city and occupied under the name of "Nancy Hank," and which you are now renting from month to month has been increased to ninety dollars per month beginning October 1st, 1928.

"You are further advised that if you should desire to discuss terms for a written lease

for any definite time, a slight reduction in the rental then as above mentioned will be considered. However, unless a lease is actually drawn up, signed and completed before the first of next month the rental of $90.00 per month shall remain until further notice.

"However as your landlord is negotiating with other tenants, it is advisable if you desire to remain in the premises for any definite time, that a written lease will be prepared."

In the original petition the notice of renewal is alleged and copied in full, and it is further alleged that the defendant had no lease with V. Polizzotto's sons, and that she well knew and understood that the notice given was from petitioner and referred to the lease between your petitioner and the defendant.

In two answers filed by the defendant on the same day she admits that she received the notice of intention to renew the lease and admits that she had no lease with V. Polizzotto & Sons.

She further admits that her attorney answered said notice, directing her answer to her lessee in which she advised that she was willing and ready to renew a lease, but she denied that her attorney advised that she would renew the option of the existing lease.

The two answers set up practically the same facts, except that in one of them the defendant alleges that the letter of her attorney was written under the erroneous impression that the notice for renewal was signed by her lessee, and she further alleged that the letter was not written to express consent to the renewal but was for the purpose of settling the dispute as to certain terms and conditions.

In one of the answers she asks in the alternative, in case the lease is held to be renewed, that the clause forbidding the operation of a conflicting business be stricken out on the ground that it was placed in the lease through error, misrepresentation, and undue influence.

On the day the two answers were filed the plaintiff filed a supplemental petition in which it was alleged that the defendant, through her authorized attorney, acknowledged to petitioner personally, in writing, receipt of the letter and notice set out in article 3 of the petition, and expressed her readiness to renew her lease with petitioner. The letter is copied in full.

In answer filed January 4, 1929, to the supplemental petition, the defendant admits the facts set out therein.

The correspondence quoted, the pleadings referred to, and the other facts recited as they appear from the record speak for themselves, and in our opinion make out a case in favor of the plaintiff and refute absolutely the technical contention or defense urged on behalf of defendant.

There had been a firm known as V. Polizzotto & Sons of which the plaintiff was a member. He had managed the firms business to the knowledge of defendant and had finally become the sole owner. The lease was to the plaintiff individually and not to the firm. The plaintiff lessee dictated the notice to his lessor, but in signing the same his stenographer or bookkeeper signed the notice with the firm's name and not the name of the plaintiff.

The notice was received by the defendant and was answered at her instance or that of her husband and agent, by her attorney.

The answer was directed to the lessee and started out by saying, "We note wherein you have expressed a desire to renew a lease ex-

isting between yourself and Mrs. D'Agostino of date August 5th, 1926 for an additional period of three years."

There can be no doubt whatever that the notice of desire for a renewal of the lease was accepted, treated, and considered by the defendant as coming from the defendants lessee, and no question whatever was raised as to the fact that the notice was signed by the firm of which her lessee had been a member and not by her lessee until after the expiration of the original lease and after all efforts on the lessor's part to eliminate the "conflicting business" clause had proved unsuccessful.

We have no doubt whatever that, had the defendant succeeded in getting the objectionable covenant left out, the lease would have been renewed and no question would have been raised of the failure of the lessee to sign the notice.

The defendant wanted to renew the lease. She wanted to retain plaintiff as lessee for he was a good tenant. She said so herself.

The attempt to reform the conditions of the lease to her liking having failed, the technical objection was seized upon to force her lessee to agree on her terms and in the alternative to avoid a renewal of the lease. The defendant has not acted in good faith with her lessee.

If she had raised the objection at the beginning that the notice was not signed by the plaintiff, the plaintiff could have corrected the error. But she accepted the notice as coming from the proper party and treated with the plaintiff on that assumption.

We are not impressed with the claim that the error or mistake in the signature was not discovered until after the expiration of the lease. The notice itself, while referring to the particular lease between the parties, was sufficient on its face to inform any one, from a mere casual reading, that it was not signed by the lessee.

The rule stated by Corpus Juris, vol. 46, pp. 554 and 555, is that mere informalities do not violate notice so long as they do not mislead, and give the necessary information to the proper party.

And "where notice is required to emanate from a given person, the fact that others join with him in giving notice does not violate it."

The authorities cited by the defendant are not in conflict with the views herein expressed.

Our conclusion is that, while the notice might be technically informal, it was sufficient on its face in view of all of the circumstances to advise the defendant of the intention and desire of her lessee to renew the then existing lease for an additional term of three years.

[4] And, further, that, having accepted and acted on said notice as being sufficient, the defendant thereafter cannot be heard to raise the question of the technical informality of the notice, or complete want of notice.

We have considered the evidence on the question of reforming the lease and find nothing therein which would warrant the court in striking out of the lease the clause forbidding the operation of a business in conflict with that conducted by the lessee.

The plaintiff is entitled to the renewal of his lease on the same terms and conditions and at the same price as the original lease for an additional period of three years commencing September 1, 1928, and ending August 31, 1931.

The judgment appealed from is set aside, and it is now ordered that there be judgment in favor of the plaintiff Sam Polizzotto and

against defendant Mrs. Antoinette Danna D'Agostino recognizing the right of said plaintiff to have the lease with defendant renewed for a term of three years beginning September 1, 1928, and ending August 31, 1931, on the same terms and conditions and at the same price as contained in the original lease.

It is further ordered that the defendant be restrained and enjoined from interfering with plaintiff's possession of the lease premises during the existence of said renewed lease.

The defendant to pay all costs of this suit.