372 So.2d 1228 (1979)
SOUTHERN VENTURES CORPORATION
v.
TEXACO, INC.
No. 63945.
Supreme Court of Louisiana.
June 25, 1979.
*1229 Dan E. Melichar, Gravel, Roy & Burnes, Alexandria, for plaintiff-applicant.
Patrick J. Butler, New Organs, Frederick B. Alexius, Provosty, Sadler & deLaunay, Alexandria, for defendant-respondent.
BLANCHE, Justice.
Plaintiff, Southern Ventures Corporation, by this writ seeks reversal of a decision of the Court of Appeal and reinstatement of the decision of the trial court.
The action arises out of a dispute concerning the exercise of an option to renew a lease of immovable property. By written act of lease dated March 27, 1958, Southern Ventures leased to Texaco Inc. (then known as "The Texas Company"), a gasoline service station located at 740 MacArthur Drive in Alexandria, Louisiana. The lease instrument provided for an initial term of fifteen years beginning on February 16, 1959, together with an option for four five-year renewals, making the maximum possible term of the lease thirty-five years.
The lease provided that notice of intention to exercise the first option had to be given by the lessee, in writing, no later than sixty days prior to the expiration of the initial fifteen-year term. Thus, the written exercise of the option had to be accomplished no later than December 17, 1973, since the primary fifteen-year term expired on February 16, 1974.
By letter dated January 7, 1974, addressed to the president of Southern Ventures, Texaco stated its intention to exercise the first five-year option under the lease. This notice was not sent within the sixty-day period prescribed by the agreement. The letter requested that Southern Ventures signify its assent to the exercise of the option by signing the letter and returning it to Texaco's Shreveport office. Southern Ventures never returned the letter. Subsequent to February 16, 1974, Texaco continued to occupy the property and continued to pay the rent provided in the lease, consisting of a monthly rental of $425 plus 1.5 percent overriding royalty on all gasoline sales in excess of 300,000 per year.
By way of background, both before and after January, 1974, a dispute had existed between the parties concerning certain repairs to be made to the roof of the station that Texaco had requested Southern Ventures to make. Southern Ventures had refused to make any repairs to the roof, and after the dispute had continued for some time, Southern Ventures, by letter from its attorney dated April 23, 1975, advised Texaco that Southern Ventures considered the rental of the premises to have been on a month-to-month basis since February, 1974, and that the lease could be terminated at the will of either party by giving proper notice during any given month.
Thereafter, the dispute concerning the roof continued on and off for the next two years, together with discussions, negotiations and various proposals between the parties seeking to resolve their differences. Finally, Southern Ventures gave Texaco written notice by registered mail, dated August 1, 1977, advising Texaco to vacate the premises no later than September 1, 1977. The last rent check cashed by plaintiff was for the month of August, 1977. Texaco remained on the premises and Southern Ventures filed a rule for eviction.
For written reasons, the district court ruled that the lease was only on a month-to-month basis and ordered Texaco to vacate the premises.
A suspensive appeal to the Court of Appeal, Third Circuit, was perfected and that court reversed the judgment of the district court. We granted a writ of review.
The trial court found that Texaco's letter of January 7, 1974, was untimely and insufficient notice to exercise the option which it *1230 had under the lease. It then proceeded to find there was no valid renewal of the lease for the first of the five-year renewal terms, that the only rights existing in favor of the lessee were on a month-to-month basis, and that when lessor gave notice terminating the arrangement, it was sufficient to terminate all rights and require lessee to leave the property.
Texaco appealed and the Court of Appeal reversed, finding that the law required that the notice be recognized as valid, even though late, once lessor had accepted rental payments from lessee, citing Civil Code Article 1817, Lingle v. Wainwright, 215 La. 117, 39 So.2d 843 (1949); and Lakeside Dairies, Inc., v. Gregersen, 217 La. 510, 46 So.2d 752 (1950).
We thoroughly agree with the trial judge's analysis of the issue and reverse the decision of the Court of Appeal. The lease provision required notice of the lessee's election to exercise the option sixty days prior to the expiration of the initial term of the lease. There is no other provision in the lease contract which would obligate the lessor to accept the late notice. Therefore, the lease agreement came to an end at the expiration of the initial lease period and the only right by which the lessee could retain possession of the property is on a month-to-month basis.
Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970), expresses the law relative to occupancy of leased premises after the lease expires, referring to the appropriate code articles:
"Under our Civil Code provisions based on these articles of the Code Napoleon, legal reconduction takes place when a fixed-term lease expires and the lessee without opposition continues to occupy the premises for more than a week. The reconducted lease is actually a continuation of the lease under the same terms and conditions except that the fixed term or period of duration in the old lease is voided and the reconducted lease is considered to be by the month. La.Civ.Code
Arts. 2689, 2685, 2686...." (235 So.2d at 576)
See also Louisiana Civil Code Article 2691.
Texaco relies on Lingle v. Wainwright, supra, and Lakeside Dairies, Inc. v. Gregersen, supra, to establish that notice is waived if the lessor continues to accept rental payments when the notice is late or in some way defective. It is argued that even though notice was late by the terms of the agreement, it was within the primary term of the lease and, therefore, a valid notice, and when Southern Ventures continued to accept rental payments thereafter it waived Texaco's delay in giving notice.
We disagree. The subsequent acceptance of the rental payments should not be construed as implying an agreement to extend the time for the exercise of the option in some other way which would be at variance with their agreement. Southern Ventures, in fact, did not return Texaco's letter wherein Texaco sought to exercise the option. Furthermore, paragraph (13) of the lease agreement reads as follows:
"(13)Holdover. If, at the expiration or termination of this lease or any extension thereof, lessee shall hold over for any reason, the tenancy of lessee thereafter shall be from month to month only and be subject to all other terms and conditions of this lease, in the absence of a written agreement to the contrary."
Thus, it seems that the parties had agreed concerning what terms would be applicable with respect to the lessee's occupancy of the property after expiration of the lease. In view of their agreement in this regard, there seems to be little need to inquire as to what, if any, implied contractual obligations resulted from Texaco's acceptance of the rent.
"Contracts are not presumed, and therefore the option or right to renew a lease is never presumed. The civil law has expressly recognized that occupancy of premises by a lessee after the expiration of a fixed-term lease constitutes reconduction...." (Governor Claiborne Apartments, Inc. v. Attaldo, supra, at 576)
*1231 Regardless of our holding in the Lingle and Lakeside cases, supra, in this case neither the statutory nor contractual law of the parties as expressed by their agreement favors Texaco's position, and we find that they have failed to show that there was a renewal of the lease for five years by either implied or express agreement.
For the above and foregoing reasons, the judgment of the Court of Appeal is reversed and the judgment of the district court is hereby reinstated, at defendant's cost.
REVERSED AND RENDERED.
MARCUS, J., dissents, being of the opinion that this court's decision in Lakeside Dairies, Inc. v. Gregersen, 217 La. 510, 46 So.2d 752 (1950) is correct and controlling here.